IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**
APR - 2 2010
J. T. NOBLIN, CLERK
BY_____ DEPUTY

LEONORA MURRAY, STEPHEN
MURRAY, SR., and M. B., a minor, by and through
her maternal grandmother, LEONORA MURRAY                    **PLAINTIFFS**

vs.                                          CIVIL ACTION NO.: 3:10cv188 DPJ-
FKB

GENERAL MOTORS LLC and SKINNER
CHEVROLET BUICK PONTIAC GMC                                **DEFENDANTS**

---

### NOTICE OF REMOVAL

---

Please take notice that General Motors LLC (GM) has removed this civil action from the

Circuit Court of Copiah County to the United States District Court for the Southern District of

Mississippi, Jackson Division, and supports this removal as follows:

### GROUNDS FOR REMOVAL

1.      Pursuant to 28 U.S.C. 1446(a), GM states that the basis for removal is diversity

jurisdiction pursuant to 28 U.S.C. § 1332.

2.      The amount in controversy exceeds the sum or value of seventy-five thousand dollars

($75,000), exclusive of interest and costs.[1]

3.      There is diversity of citizenship between the Plaintiffs and GM,[2] the only properly

joined Defendant that remains in this lawsuit.

### DATE LAWSUIT FILED

4.      On March 5, 2010, Plaintiffs filed their *Complaint* in this civil action in the Circuit

---

[1] *Complaint* at p. 9, Prayer.

[2] *Id.* at pp. 1-2, ¶¶1-2 and 4.

Court of Copiah County, Mississippi.

DATES LAWSUIT SERVED

5.     GM was served with this lawsuit on March 10, 2010.

6.     Motors Liquidation Company (MLC) was served on March 10, 2010.

7.     Skinner Chevrolet Buick Pontiac GMC (Skinner Chevrolet) was served on March 11, 2010.

MLC DISMISSED

8.     MLC was dismissed from this lawsuit by an *Order* that was signed March 26, 2010 and filed on March 30, 2010.[3]

COPIES OF PROCESS, PLEADINGS & ORDERS

9.     Pursuant to 28 U.S.C. §1446(a), copies of all process, pleadings, and orders served on or by GM are attached as *Exhibit "1."*

10.     A copy of the *Order Dismissing Motors Liquidation Company* is attached as *Exhibit "2."*

REMOVAL IS TIMELY

11.     Pursuant to 28 U.S.C. §1446(b), this *Notice of Removal* is timely because it is filed with the Court within 30 days after the receipt by GM of Plaintiffs' *Complaint.*

VENUE IS PROPER

12.     Pursuant to 28 U.S.C. § 1446(a), the United States District Court for the Southern District of Mississippi, Jackson Division is the district in which the state court action was filed. *See* 28 U.S.C. § 104(b)(1).

---

[3]*Order Dismissing Motors Liquidation Company* attached as *Exhibit "2."*

<u>NOTICE OF FILING TO STATE COURT AND ADVERSE PARTIES</u>

13.   Pursuant to 28 U.S.C. § 1446(d), GM is promptly filing a *Notice of Removal* with the Clerk of the Circuit Court of Copiah County, Mississippi and giving written notice thereof to all adverse parties.

<u>PLAINTIFFS' CITIZENSHIP</u>

14.   Plaintiffs are residents of Mississippi.[4]

<u>DEFENDANTS' CITIZENSHIP</u>

15.   Plaintiffs named GM as a Defendant.  GM is a Delaware limited liability company that has its principal place of business in Michigan.[5]   Accordingly, as between Plaintiffs and GM, there is complete diversity of citizenship.

16.   Plaintiffs named MLC as an additional Defendant. MLC is a Delaware corporation with its principal place of business in Michigan.[6]   MLC has been dismissed from this lawsuit.[7]

<u>IMPROPER JOINDER OF SKINNER CHEVROLET</u>

17.   Plaintiffs named Skinner Chevrolet as an additional Defendant.  Skinner Chevrolet is a Mississippi corporation with its principal place of business in Mississippi.[8]

18.   Skinner Chevrolet was improperly joined for the sole purpose of defeating diversity jurisdiction.

---

[4] *Complaint* at p. 1, ¶¶1-2.

[5] *Id.* at p. 2, ¶4.

[6] *Id.* at p. 2, ¶3.

[7] *Order Dismissing Motors Liquidation Company* attached as *Exhibit "2."*

[8] *Complaint* at p. 2, ¶5.

19.    Plaintiffs alleged that the subject car had defects in the (a) air bag system; and (b) the steering and wheel assembly components.[9] More specifically, plaintiffs allegations concerning the steering and wheel assembly is that the driver's (left) side front wheel assembly suspension components on the car were defective and broke before the accident, causing the driver's side of the car to drop to the ground which made the driver unable to steer the car.[10]

20.    Skinner Chevrolet is an innocent seller.[11] It is immune from liability under Miss. Code Ann. §11-1-63(h) in this products liability claim.

21.    Plaintiffs made conclusory allegations against Skinner Chevrolet[12] which are not sufficient to state a claim against Skinner Chevrolet.  *See Baggett v. Yamaha Motor Co., Ltd.*, 2006 WL 1520539, *1 (S.D. Miss.).

22.    Skinner Chevrolet had no knowledge of any defects in those components of the car that plaintiffs allege caused their damages when it sold the car.[13]

23.    Plaintiff, Stephen Murray, purchased the car on August 12, 2005.[14]  Plaintiffs alleged that, after Mr. Murray purchased the car, the frontal air bag system on the car was recalled twice.[15] Even if that allegation is true, those recalls issued after Mr. Murray purchased the car cannot possibly

---

[9]*Id.* at p. 5, ¶¶31 and 32.

[10]*Complaint* at pp. 5-6, ¶¶32 and 38; October 9, 2009 letter from plaintiffs' counsel, Carroll Rhodes attached as *Exhibit "3"*; *Affidavit of Cherlyn Stagner* at p. 2, ¶4 attached as *Exhibit "4"*; and *Affidavit of William O'Keefe* at pp. 1-2, ¶¶4-8, with photographs, attached as *Exhibit "5."*

[11]*See Affidavit of Vera Skinner* attached as *Exhibit "6."*

[12]*Complaint* at pp. 4-9, ¶¶13-14, 20, 23-34, 40-52 and 54-56.

[13]*Affidavit of Vera Skinner* at p. 2, ¶¶8-9.

[14]*Complaint* at p. 3, ¶11.

[15]*Id.* at p. 4, ¶¶15-16.

4

have given Skinner Chevrolet notice of any defect in the car at the time it sold the car.  *See Baggett v. Yamaha Motor Co., Ltd., supra* at *2; *Fife v. Polaris Industries, Inc.*, 2007 WL 534215, **1-2 (S.D. Miss.).

24.    Skinner Chevrolet had no knowledge of any of the defects in those components of the car that plaintiffs allege caused their damages when it performed work on that car.[16]

25.    Plaintiffs alleged that Skinner Chevrolet breached implied warranties that caused their damages.[17]  Plaintiffs' breach of implied warranty claim does not state a cognizable claim against Skinner Chevrolet.  *See Collins v. Ford Motor Co.*, 2006 WL 2788564, *3 (S.D. Miss.); *Jones v. General Motors Corp.*, 2007 WL 1610478 *3, (S.D. Miss.); *Jenkins v. Kellog Co.*, 2009 WL 2005162, *4 (N.D. Miss.); Miss. Code Ann. §11-1-63(h).

26.    Plaintiffs alleged that Skinner Chevrolet breached express warranties that caused their damages.[18]  Plaintiffs do not have an arguably reasonable basis upon which they can recover against Skinner Chevrolet under an express warranty theory.  Plaintiffs did not plead the terms of any alleged express warranty, nor did plaintiffs attach a copy of any such express warranty.  *See* Mississippi Rule of Civil Procedure 10(d).  Plaintiffs' conclusory allegations concerning an alleged breach of express warranty claim do not state a claim against Skinner Chevrolet.  *See Baggett v. Yamaha Motor Co., Ltd., supra* at *1.  Furthermore, Skinner Chevrolet made no express warranties concerning the components that plaintiffs allege caused their damages, other than as a mere conduit of the car's

---

[16]*Affidavit of Vera Skinner* at p. 2, ¶¶8-9.

[17]*Complaint* at pp. 3-5 and 8, ¶¶12, 20, 23, 31-33 and 50.

[18]*Id.* at pp. 5-7, ¶¶31-33 and 49.

manufacturer.[19] Skinner Chevrolet's immunity as an innocent seller under Miss. Code Ann. §11-1-63(h) "extends to all theories of liability." *Jenkins v. Kellogg Co., supra* at *4.

27.    Plaintiffs alleged that Skinner Chevrolet repaired the car and caused their damages.[20] However, Skinner Chevrolet performed no repairs on those components of the car that plaintiffs claim caused their damages.[21]   Therefore, plaintiffs have no cause of action against Skinner Chevrolet under an improper repair theory. *Jones v. General Motors Corp., supra* at **5-6; *Creel v. General Motors Corp.*, 233 So.2d 105, 108 (Miss. 1970).

28.    Plaintiffs made conclusory allegations that Skinner Chevrolet had a duty to inspect, identify, repair and notify plaintiffs about any defects in their car.[22]   These types of conclusory allegations do not state a cause of action against Skinner Chevrolet. *Baggett v. Yamaha Motor Co., Ltd., supra* at *1. Further, these allegations do not set forth an arguably reasonable basis upon which the plaintiffs can recover against Skinner Chevrolet. *See Jordan v. American Suzuki Motor Corp.*, 2007 WL 1521521, *4 (S.D. Miss.).

29.    Plaintiffs alleged that Skinner Chevrolet made fraudulent and/or misrepresentations and omissions that caused their damages.[23]   The plaintiffs have no reasonable possibility of success on this claim. *See Rials v. Philip Morris, USA*, 2007 WL 586796, *3 (S.D. Miss.).   These types of conclusory allegations do not state a cause of action against Skinner Chevrolet. *Baggett v. Yamaha Motor Co., Ltd., supra* at *1.   Further, Skinner Chevrolet made no such fraudulent and/or negligent

---

[19]*Affidavit of Vera Skinner* at p. 3, ¶¶16-17.

[20]*Complaint* at pp. 3, 5 and 7, ¶¶12, 24, 28, 30 and 48.

[21]*Affidavit of Vera Skinner* at pp. 2-3, ¶¶7 and 13-15.

[22]*Complaint* at p. 5, ¶28.

[23]*Id.* at pp. 6-8, ¶¶43-44 and 51-52.

misrepresentations or omissions.[24]

30.   There is no possibility that Plaintiffs will be able to establish a cause of action against Skinner Chevrolet in the state courts of Mississippi arising out of the facts alleged in Plaintiffs' Complaint.  Skinner Chevrolet was improperly joined in this action for the sole purpose of defeating this Court's subject matter jurisdiction.  *Weathersby v. General Motors Corp.*, 2006 WL 1487025, **2-3 (N.D. Miss.); *Willis v. Kia*, 2007 WL 1860769, **2-3 (N.D. Miss.).

31.   This Court should ignore the alleged citizenship of Skinner Chevrolet for the purpose of determining diversity, and thereby exercise subject matter jurisdiction over Plaintiffs' claims against GM because complete diversity exists.  *Weathersby v. General Motors Corp., supra*; *Willis v. Kia, supra.*

WHEREFORE, General Motors LLC respectfully requests that this *Notice of Removal* be filed, that Civil Action No. 2010-0086 in the Circuit Court of Copiah County, Mississippi be removed to and proceed in this Court, and that no further proceedings be had in Civil Action No. 2010-0086 in the Circuit Court of Copiah County.

Respectfully submitted,

BY:_____

PAUL V. CASSISA, JR.
MS Bar No. 5921
Attorney for Defendant

---

[24] *Affidavit of Vera Skinner* at pp. 2-3, ¶¶8-11 and 16-17.

OF COUNSEL:
Paul V. Cassisa, Jr., Esq.
BERNARD, CASSISA, ELLIOTT & DAVIS
P.O. Box 1138
Oxford, MS 38655
(662) 234-7236

## CERTIFICATE OF SERVICE

I certify that on the _2ND_ day of _April_, 2010 a copy of this document was

served, by United States mail, postage pre-paid, on:

Carroll Rhodes, Esq.
The Law Offices of Carroll Rhodes
P.O. Box 588
Hazlehurst, MS 39083
crhode@bellsouth.net

Roy A. Smith, Jr., Esq.
Daniel Coker Horton & Bell, P.A.
P.O. Box 1084
Jackson, MS 39215-1084
rsmith@danielcoker.com

_____
PAUL V. CASSISA, JR.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

LEONORA MURRAY, STEPHEN
MURRAY, SR., and M. B., a minor, by and through
her maternal grandmother, LEONORA MURRAY         **PLAINTIFFS**

vs.                      **CIVIL ACTION NO.:** _____

GENERAL MOTORS LLC and SKINNER
CHEVROLET BUICK PONTIAC GMC         **DEFENDANTS**

---

## ATTACHMENTS TO
## NOTICE OF REMOVAL

---

1.     *Complaint*;

2.     *Order Dismissing Motors Liquidation Company*;

3.     October 9, 2009 letter from plaintiffs' counsel, Carroll Rhodes;

4.     *Affidavit of Cherlyn Stagner*;

5.     *Affidavit of William O'Keefe*;

6.     *Affidavit of Vera Skinner*.

Respectfully submitted,

BY: _____
PAUL V. CASSISA, JR.
MS Bar No. 5921
Attorney for Defendant

OF COUNSEL:
Paul V. Cassisa, Jr., Esq.
BERNARD, CASSISA, ELLIOTT & DAVIS
P.O. Box 1138
Oxford, MS 38655
(662) 234-7236

CERTIFICATE OF SERVICE

I certify that on the ____ day of _____, 2010 a copy of this document was

served, by United States mail, postage pre-paid, on:

Carroll Rhodes, Esq.
The Law Offices of Carroll Rhodes
P.O. Box 588
Hazlehurst, MS 39083
crhode@bellsouth.net

Roy A. Smith, Jr., Esq.
Daniel Coker Horton & Bell, P.A.
P.O. Box 1084
Jackson, MS 39215-1084
rsmith@danielcoker.com

PAUL V. CASSISA, JR.

2

## CT Corporation

**Service of Process Transmittal**
03/10/2010
CT Log Number 516280058

**TO:**  Rosemarie Williams
General Motors Legal Staff
400 Renaissance Center, Mail Code 482-038-210
Detroit, MI 48265-4000

**RE:**  **Process Served in Mississippi**

**FOR:**  General Motors LLC (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Leonora Murray, Stephen Murray, Sr. and minor child through her maternal Grandmother, Leonora Murray, Pltfs. vs. Motors Liquidation Company f/k/a General Motors Corporation et al including General Motors, LLC, Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Exhibit |
| **COURT/AGENCY:** | Copiah County Circuit Court, MS<br>Case # 20100086 |
| **NATURE OF ACTION:** | Product Liability Litigation - Breach of Warranty - Breach of Warranties, 2006 Chevrolet HHR airbags, steering and wheel assembly, Personal Injuries |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Flowood, MS |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 03/10/2010 at 09:30 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days of service |
| **ATTORNEY(S) / SENDER(S):** | Carroll Rhodes<br>The Law Offices of Carroll Rhodes<br>P. O. Bbox 588<br>119 Downing Street<br>Hazlehurst, MS 39083<br>601-894-4323 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex 2 Day , 791522412338<br>Image SOP<br>Email Notification, SOP Recipient gm_sop@gm.com<br>Fax Transmittal, Rosemarie Williams 313-665-7572<br>CC Recipient(s)<br>Rosemarie Williams, via Regular Mail |
| **SIGNED:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>645 Lakeland East Drive<br>Suite 101<br>Flowood, MS 39232<br>601-936-7400 |

Page 1 of 1 / LR

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

GMC-LEGAL

MAR 5 2010

SERVICE OF PROCESS
RENAISSANCE CENTER RECEPTION

**EXHIBIT**

/

**IN THE CIRCUIT COURT OF COPIAH COUNTY, MISSISSIPPI**

LEONORA MURRAY, STEPHEN MURRAY, SR.,
and M.B., a Minor, by and through her maternal
Grandmother, LEONORA MURRAY                                            **PLAINTIFFS**

VS.                                          **CIVIL ACTION NO.** 2010-0086

MOTORS LIQUIDATION COMPANY f/k/a
GENERAL MOTORS CORPORATION;
GENERAL MOTORS, LLC; and SKINNER
CHEVROLET BUICK PONTIAC GMC                                  **DEFENDANTS**

### SUMMONS

TO:   C T CORPORATION SYSTEM, Registered Agent for GENERAL MOTORS, LLC
      645 Lakeland East Drive, Suite 1
      FLOWOOD, MISSISSIPPI 39232

### NOTICE TO DEFENDANT(S)

**THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT
AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

You are required to mail or hand-deliver a copy of a written response to the Complaint to
Carroll Rhodes, attorney for Petitioner, whose address is The Law Offices of Carroll Rhodes,
Post Office Box 588, 119 Downing Street, Hazlehurst, Mississippi 39083. Your response must
be mailed or delivered within thirty (30) days of the date of delivery of this Summons and
Petition, or a judgment by default will be entered against you for the money or other things
demanded in the Petition.

You must also file the original of your response with the Clerk of this Court within a
reasonable time afterward.

Issued under my hand and the seal of said Court, this the 5 day of ~~February~~ MARCH, 2010.

EDNA E. STEVENS, CIRCUIT CLERK

BY: _Sina S Presley_, D.C.

EDNA E. STEVENS
CIRCUIT CLERK
COPIAH COUNTY
P.O. BOX 467
HAZLEHURST, MS 39083

**IN THE CIRCUIT COURT OF COPIAH COUNTY, MISSISSIPPI**

LEONORA MURRAY, STEPHEN MURRAY, SR.,
and M.B., a Minor, by and through her maternal
Grandmother, LEONORA MURRAY                                    **PLAINTIFFS**

**VS.**                            CIVIL ACTION NO. 2010-0086

MOTORS LIQUIDATION COMPANY f/k/a
GENERAL MOTORS CORPORATION;
GENERAL MOTORS, LLC; and SKINNER
CHEVROLET BUICK PONTIAC GMC                                    **DEFENDANTS**

**SUMMONS**

**TO:**    **C T CORPORATION SYSTEM, Registered Agent for GENERAL MOTORS, LLC**
          **645 Lakeland East Drive, Suite 1**
          **FLOWOOD, MISSISSIPPI 39232**

**NOTICE TO DEFENDANT(S)**

**THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT
AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.**

You are required to mail or hand-deliver a copy of a written response to the Complaint to
Carroll Rhodes, attorney for Petitioner, whose address is The Law Offices of Carroll Rhodes,
Post Office Box 588, 119 Downing Street, Hazlehurst, Mississippi 39083.  Your response must
be mailed or delivered within thirty (30) days of the date of delivery of this Summons and
Petition, or a judgment by default will be entered against you for the money or other things
demanded in the Petition.

You must also file the original of your response with the Clerk of this Court within a
reasonable time afterward.

Issued under my hand and the seal of said Court, this the 5 day of MARCH, 2010.

EDNA E. STEVENS, CIRCUIT CLERK

BY: _Ema S Presley_, D.C.

EDNA E. STEVENS
CIRCUIT CLERK
COPIAH COUNTY
P.O. BOX 467
HAZLEHURST, MS 39083

## PROOF OF SERVICE

_____
NAME OF PROCESS SERVER

       I, the undersigned process server, served the Summons and Complaint upon the person or entity named above in the manner set forth below (check proper space and provide all additional information that is requested and pertinent to the mode of service used):

    ____   **PERSONAL SERVICE.**   I personally delivered copies of the Summons and Complaint to _____ _____ on the _____ day of _____, 2010, where I found said person(s) in _____ County, State of Mississippi.

    ____   **FIRST CLASS MAIL AND ACKNOWLEDGMENT SERVICE.**  By mailing first class mail, postage prepaid), on the date stated in the attached Notice, copies to the person served, together with copies of the form of Notice and Acknowledgment and return envelope, postage prepaid, addressed to the sender.

    ____   **RESIDENCE SERVICE.**   After exercising reasonable diligence, I was unable to deliver copies of the Summons and Complaint to said person within _____ County, State of Mississippi.   I served the Summons and Complaint on the _____ day of _____, 2010, by mailing (via first class mail, postage prepaid), copies to the person served at his or her usual place of abode where the copies were left.

    ____   **CERTIFIED MAIL SERVICE.**   By mailing to an address outside Mississippi (by first class mail, postage prepaid, requiring a return receipt) copies to the person served.

    At the time of service, I was at least 18 years of age and not a party to the action.

FEE FOR SERVICE:         $_____

PROCESS SERVER MUST LIST BELOW:       **(PLEASE PRINT OR TYPE)**

NAME:     _____

ADDRESS:     _____

TELEPHONE NO.:     _____

IN THE CIRCUIT COURT OF COPIAH COUNTY, MISSISSIPPI

LEONORA MURRAY, STEPHEN                                    **PLAINTIFFS**
MURRAY, SR., and M. B., a minor, by and through
her maternal grandmother, LEONORA MURRAY

VS.                                           CIVIL ACTION NO. 2010-0086

MOTORS LIQUIDATION COMPANY f/k/a
GENERAL MOTORS CORPORATION;
GENERAL MOTORS LLC;  and SKINNER
CHEVROLET BUICK PONTIAC GMC                                **DEFENDANTS**

## JURY DEMANDED
## COMPLAINT

COME NOW the plaintiffs, Leonora Murray, Stephen Murray, Sr., and M. B., a minor, by

and through her maternal grandmother, Leonora Murray, and make and file this their complaint

against the defendants,  Motors Liquidation Company f/k/a General Motors Corporation ("GM");

General Motors LLC ("GM LLC"); and Skinner Chevrolet Buick Pontiac GMC ("Skinner"), and for

said cause would show unto the Court the following, to-wit:

## PARTIES

1.    Plaintiffs, Leonora Murray and Stephen Murray, are adult resident citizens of Copiah

County, Mississippi, whose post office and residence address is Hazlehurst, Mississippi 39083.

2.    Plaintiff, M. B., is a minor resident citizen of Copiah County, Mississippi, who brings

this action by and through her maternal grandmother, Leonora Murray, who is an adult resident

citizen of Copiah County, Mississippi, and whose post office and residence address is Hazlehurst,

Mississippi 39083.

1


FILED

MAR 0 5 2010

EDNA E. STEVENS
CIRCUIT CLERK
BY_____ D.C.

3.    Defendant, Motors Liquidation Corporation f/k/a General Motors Corporation ("GM"), is a foreign corporation organized and incorporated under the laws of the State of Delaware, and it has its principal place of business in the State of Michigan. This defendant has qualified to do business in the State of Mississippi and is doing business in the State of Mississippi. This defendant may be served with the process of this Court by serving its registered agent for the service of process, C T Corporation System, whose address is 645 Lakeland East Drive, Suite 1, Flowood, Mississippi 39232.

4.    Defendant, General Motors LLC ("GM LLC"), is a foreign corporation organized and incorporated under the laws of the State of Delaware, and it has its principal place of business in the State of Michigan. This defendant has qualified to do business in the State of Mississippi and is doing business in the State of Mississippi. This defendant may be served with the process of this Court by serving its registered agent for the service of process, C T Corporation System, whose address is 645 Lakeland East Drive, Suite 1, Flowood, Mississippi 39232.

5.    Defendant, Skinner Chevrolet Buick Pontiac GMC ("Skinner"), is a domestic corporation incorporated under the laws of the State of Mississippi, and it has its principal place of business in the First Judicial District of Hinds County, Mississippi. This defendant has qualified to do business in the State of Mississippi and is doing business in the State of Mississippi. This defendant may be served with the process of this Court by serving its registered agent for the service of process, Vera D, Skinner, whose address is 25060 Highway 51, Crystal Springs, Mississippi 39059.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction of this damages action based on negligence, gross

2

negligence, misrepresentation, strict liability, products liability, and breach of implied warranty of fitness pursuant to *§ 9-7-81, Miss. Code Ann. (2009)*.

7.     Venue is proper in Copiah County, Mississippi pursuant to *§ 11-11-3, Miss. Code Ann. (2009)* because the cause of action arose and accrued in Copiah County, Mississippi.

8.     Plaintiffs  bring this action under the common law and state statutory law of Mississippi only, and the plaintiff expressly disavows any federal claims in this case.

## FACTS

9.     At all times mentioned herein, the defendants, GM and GM LLC,  were designers, sellers, warrantors, testors, manufacturers, and distributors of motorized vehicles, including the 2006 Chevrolet HHR automobile. purchased and owned by the plaintiff.

10.     At all times mentioned  herein, the defendant, Skinner,  was a merchant, seller, warrantor, testor, repairer, and distributor of motorized vehicles, including the 2006 Chevrolet HHR automobile purchased and owned by the plaintiff, Stephen Murray.

11.     Plaintiff, Stephen Murray, purchased  a new 2006 Chevrolet HHR automobile from the defendant, Skinner, on August 12, 2005.  A true and correct copy of the motor vehicle retail installment contract, security agreement, and disclosure statement is attached hereto as Exhibit "A" and incorporated herein.

12.     At all times mentioned herein, the defendants, GM, G M LLC, and Skinner Chevrolet Buick Pontiac GMC, titled, distributed, impliedly warranted, provided maintenance for, repaired, advertised, marketed, prepared, inspected, received technical data and information concerning, placed their names on, and/or sold the 2006 Chevrolet HHR automobile purchased and  owned by the plaintiff.

3

13.   Defendant, Skinner, received and/or was positioned to receive specific vehicle information from defendants, GM and GM LLC, and was responsible for passing along all vehicle information to buyers and consumers of vehicles manufactured and sold by GM and GM LLC including the 2006 Chevrolet HHR automobile purchased and owned by the plaintiff.

14.   Defendant, Skinner, was not a mere sales conduit.

15.   On October 27, 2006, the defendants, GM and GM LLC, and the National Highway Transportation Safety Administration (NHTSA) of the United States Department of Transportation, issued a re-call concerning the frontal airbags of the 2006 Chevrolet HHR automobile.

16.   On January 30, 2008, the defendants, GM and GM LLC, and the National Highway Transportation Safety Administration (NHTSA) of the United States Department of Transportation, issued a re-call concerning the frontal airbags of the 2006 Chevrolet HHR automobile.

17.   The airbag system and airbag sensors in the 2006 Chevrolet HHR automobile purchased adn owned by the plaintiff was in a defective and unreasonably dangerous condition when it left the manufacturer, GM and GM LLC, and when it reached the ultimate user or consumer, the plaintiff.

18.   The plaintiff, at all times relevant herein, owned the 2006 Chevrolet HHR automobile.

19.   ·The plaintiff was never notified about the recall notices.

20.   The defendants, GM, GM LLC, and Skinner, jointly and severally impliedly warranted to plaintiffs that the 2006 Chevrolet HHR automobile was merchantable  when it was sold to the plaintiff.

23.   The 2006 Chevrolet HHR automobile was not merchantable when it was manufactured and sold to the plaintiff.

4

24.     Plaintiffs took the vehicle to the defendant, Skinner, for regular inspection, service, and maintenance.

25.     At all times relevant herein, the defendant, Skinner, was acting in its own behalf and in its capacity as an agent for the defendants, GM and GM LLC.

26.     At all times relevant herein, the defendants were acting jointly and severally.

27.     At all times relevant herein, the plaintiffs acted as reasonable persons.

28.     The defendants owed plaintiffs a duty to inspect the 2006 Chevrolet HHR automobile, identify and repair any defects in the 2006 Chevrolet HHR automobile, notify plaintiffs about any defects in the 2006 HHR Chevrolet automobile, and provide plaintiffs with alternative transportation while the defendants repaired any defects in the 2006 Chevrolet automobile.

29.     The defendants breached the duty they owed to the plaintiffs.

30.     The plaintiffs were injured and damaged as a proximate resuls of the defendants breaching the duty they owed to teh plaintiffs.

31.     The defendants, GM, GM LLC, and Skinner, expressly and impliedly warranted that the airbag system and airbag sensors were properly installed, inspected, calibrated, and replaced in the 2006 Chevrolet HHR automobile, and would deploy on front-end impacts at speeds in excess of 16 miles per hour and provide protection to the driver of the vehicle from head and chest injuries.

32.     The defendants, GM, GM LLC, and Skinner, expressly and impliedly warranted that the steering and wheel assembly components in the 2006 Chevrolet HHR automobile  were properly installed, inspected, calibrated, replaced, and would not break or dislodge under normal driving conditions.

33.     The plaintiffs relied on the express and implied warranties made by the defendants.

5

34.    The plaintiffs did not know and had no way of knowing that the defendants had negligently and gross negligently designed, manufactured, installed, marketed, calibrated, sold to the general public - including the plaintiff, a defective 2006 Chevrolet HHR automobile.

35.    On August 25, 2009, plaintiff, Leonora Murray, was driving the 2006 Chevrolet HHR automobile on Jack Road in Copiah County, Mississippi.

36.    Plaintiff,  M. B., was a passenger on the back seat of the 2006 Chevrolet HHR automobile that plaintiff, Leonoar Murray, was driving.

37.    At all times relevant herein, plaintiff, Leonora Murray, was driving in a safe and reasonable manner within the posted speed limit and at a safe speed for the road conditions.

38.    All of a sudden the front end of the 2006 Chevrolet HHR automobile dropped to the pavement and the vehicle could not be steered or directed by the plaintiff, Leonora Murray.

39.    The vehicle careened off the road, hit several objects, flipped, and landed upside down on a pole that penetrated the roof.

40.    At all times relevant hereto, the defendants owed plaintiffs a duty to properly design, test, manufacture, install, equip, sell, and market the 2006 Chevrolet HHR automobile.

41.    The defendants breached the duties they owed to the plaintiff, and as a direct, sole, and proximate results thereof, the plaintiffs, Leonora Murray, Stephen Murray, Sr., and M. B., were injured and incurred damages.

42.    At all times relevant hereto, the defendants knew or should have known that they had negligently and gross negligently designed, manufactured, installed, marketed, calibrated, sold to the general public - including the plaintiff, the 2006 Chevrolet HHR  automobile.

43.    The defendants negligently, gross negligently, and fraudulently misrepresented and

6

made omissions to the public, including the plaintiffs, about the safety and maneuverability of the 2006 Chevrolet HHR automobile.

44.     The plaintiffs relied on the misrepresentations made by the defendants to their detriment, and they were injured thereby.

45.     As a direct, sole, and proximate results of that actions and inactions of the defendants, as mentioned above, the plaintiffs have been injured and suffered physical pain, emotional distress, physical impairment, permanent impairment rating, a loss of enjoyment of life, a loss of consortium, lost income, property damage, and plaintiffs have incurred medical bills.

## CAUSES OF ACTION

## COUNT I - NEGLIGENCE

46.     The actions and inactions of the defendants, as mentioned above, were negligent and constitute negligence.

## COUNT II - GROSS NEGLIGENCE

47.     The actions and inactions of the defendants, as mentioned above, were grossly negligent and constitute gross negligence.

## COUNT III - STRICT LIABILITY (manufacture, design, and repair)

48.     ·Defendants are strictly liable to the plaintiff for designing, manufacturing, installing, failing to inspect, failing to calibrate, failing to re-calibrate, and selling a defective and unreasonably dangerous product.

## COUNT IV - BREACH OF EXPRESS WARRANTY

49.     The actions and inactions of the defendants, as mentioned above, constitute a breach of express warranty.

7

## COUNT V - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

50.     The actions and inactions of the defendants, as mentioned above, constitute a breach of implied warranty of merchantability.

## COUNT VI - FRAUDULENT MISREPRESENTATION

51.     The actions, inactions, and misrepresentations of the defendants, as mentioned above, on which the plaintiff detrimentally relied constitute fraudulent misrepresentation.

## COUNT VII - NEGLIGENT MISREPRESENTATION

52.     The actions, inactions, misrepresentations, and omissions of the defendants, as mentioned above, on which the plaintiff detrimentally relied constitute negligent misrepresentation.

## COUNT VIII - DECLARATORY JUDGMENT

53.     Plaintiffs requests the Court, pursuant to *M. R. C. P. 57*, enter a declaratory judgment that any arbitration clause or agreement is procedurally and substantively unconscionable and unenforceable as a matter of law.

## CAUSATION, INJURY, AND DAMAGES

54.     As a direct, sole, and proximate results of the actions and inactions of the defendants, jointly and severally, as mentioned above, the plaintiffs were injured and suffered physical pain, emotional distress, physical impairment, permanent impairment rating, loss of consoritum,  loss of enjoyment of life, and a loss income, and plaintiff has incurred medical bills.

55.     As a direct, sole, and proximate results of the actions and inactions of the defendants, jointly and severally, as mentioned above, the plaintiffs have been injured and damaged and seeks compensatory damages from the defendants, jointly and severally, in the amount of $1,000,000.00.

56.     As a direct, sole, and proximate results of the actions and inactions of the defendants,

8

the plaintiffs have been injured and damaged and seeks compensatory damages from the defendants, jointly and severally, in the amount of $4,000,000.00.

## TRIAL BY JURY

57.     Plaintiffs demand a trial by jury pursuant to *M. R. C. P. 38*.

WHEREFORE, PREMISES CONSIDERED, plaintiffs demand judgment of and from the defendants, jointly and severally, in the amount of $5,000,000.00, together with an award of Court costs and litigation expenses.

This the 23rd  day of February, 2010.

Respectfully submitted,
LEONORA MURRAY, STEPHEN MURRAY, SR., and M. B., a minor, by and through her maternal grandmother, Leonora Murray, PLAINTIFFS

CARROLL RHODES, ESQ., MSB # 5314
LAW OFFICES OF CARROLL RHODES
POST OFFICE BOX 588
HAZLEHURST, MS 39083
TELEPHONE: (601) 894-4323
FACSIMILE: (601) 894-1464
E-MAIL:crhode@bellsouth.net

9

No. _____

# MOTOR VEHICLE RETAIL INSTALLMENT CONTRACT,
## SECURITY AGREEMENT AND DISCLOSURE STATEMENT

Date _____

Buyer and Co-Buyer - Name and Address (include County and Zip Code)

STEPHEN A MURRAY SR
136 E WHITWORTH ST
HAZLEHURST MS 39083

Seller/Creditor (Name and Address)

BLYTHER'S CHEV-BU-PONT-GMC TRUCK, IN
2801 _____
CRYSTAL SPRINGS MS 39059

**Purchase and Sale.** Seller hereby sells and Buyer hereby purchases the following described personal property (hereinafter referred to as "Vehicle"), which Buyer has examined and accepted in its present condition, delivery hereby being acknowledged subject to the terms and conditions of this Motor Vehicle Retail Installment Contract, Security Agreement and Disclosure Statement ("Contract") as contained on the face and the reverse side hereof.

**Description of Vehicle.**

| New or Used | Make/Year Mo/Model | Body Style | No. Cyl. | Gross Vehicle Weight | Vehicle Identification Number | Use For Which Purchased |
|---|---|---|---|---|---|---|
| NEW | CHEV 2006 HHR | 4DR | 4 | | 3GNDA13D86S650854 | ☑ Personal ☐ Agriculture ☐ Business ☐ |

## Federal Truth-In-Lending Disclosures

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ _____ |
|---|---|---|---|---|
| 8.99 % | $ 4793.02 | $ 19183.98 | $ 23976.80 | $ 23976.80 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 60 | 399.58 | MONTHLY BEGINNING 06/24/2006 |

**Late Charge.** If a payment is not paid in full within 10 days after it is due, you will pay a late charge of 5% of the amount of the past due installment or $5, whichever is less.
**Prepayment.** If you pay off early, you will not have to pay a penalty.
**Security Interest.** You are giving a security interest in the goods or property being purchased, and in any right you may have to payment of money from Seller or any assignee of the Seller. Collateral securing other debts you have with Seller or any assignee of the Seller may also secure this indebtedness.
**Additional Information.** See both sides of this Contract for any additional information about nonpayment, default, any required repayment in full before the scheduled date, prepayment refunds and penalties, and security interests.

### Insurance

(a) **Credit Life and/or Disability (Accident and Health) Insurance.** This insurance is not required and will not be provided unless at least one Buyer signs or initials below. The cost of optional credit insurance for the term of this Contract is:

☐ Credit Life   one insured $ ____N/A____   two insureds $ ____N/A____
Name of insured _____
Name of insured _____
☐ Disability (A&H) $ ____N/A____
Name of insured _____

I/We want to purchase the optional insurance coverage(s) marked and agree to pay the cost shown.

_____   _____
Signature or Initials of Buyer      Signature or Initials of Buyer

(b) **Property Insurance on Vehicle.** The Buyer may choose the person through whom any property insurance is to be obtained provided that person is acceptable to Seller. If obtained through the Seller, the cost is $ ____N/A____ ; calculated for a term of _____ months.

(c) **Liability insurance coverage for bodily injury and property damage caused to others is not included in the insurance coverages recited herein.**

### Itemization Of Amount Financed

1. Cash Sale Price (including accessories, services and taxes). $ 17178.90 (1)
2. Down Payment
   a. Cash Down Payment $ N/A
   b. Net Trade In (disclose as $0, if negative) $ N/A
   Make _____ Model Year _____
   Total Down Payment (sum of (a) and (b)) $ N/A (2)
3. Unpaid Balance of Cash Price (1 less 2) $ 17178.90 (3)
4. Other charges, including amounts paid to others on your behalf.
   To LNTW PROD. for optional service contract $ 1500.00 (a)*
   To Credit Life Insurance Company $ N/A (b)*
   To Disability Insurance Company $ N/A (c)*
   To Property Insurance Company $ N/A (d)*
   To Public Officials $ 10.00 (e)
   To _____ to pay balance owed on Trade-In $ N/A (f)
   To _____ for _____ $ (g)
   To GMP CORP ADMIN for GAP INSURANCE $ 495.00 (h)
   To _____ for _____ $ N/A (i)
   Total other charges (sum of (a) through (i)) $ 2005.00 (4)
5. Amount Financed (sum of 3 and 4) $ 19183.98 (5)
   * Seller (and/or its employees) may be retaining a portion of these amounts.

Ex. A

**Promise To Pay:** Buyer promises to pay to the Seller, or order, the sum of _____ NINETEEN THOUSAND ONE HUNDRED AND EIGHTY THREE AND 00/100 Dollars together with interest at ___ 8.99 ___ % per annum from ___ 03/12/2005 ___ until paid in full, payable as follows: in installments of $ ___ 329.69 ___ each beginning on the ___ 26th ___ day of ___ SEPTEMBER 2005 ___, and continuing on the ___ of each month thereafter, until the ___ 26th ___ day of ___ AUGUST 2012 ___, when the unpaid balance and any accrued interest outstanding charges shall be due and payable in full.

**Late Payment Charge.** In the event any regularly scheduled installment due herein is not paid in full within ten (10) days after such installment becomes due, Buyer promises to pay to Seller a late payment charge of five percent (5%) of the amount of the past due installment or $6.00, whichever is less, for past due installment.

**Prepayment.** Buyer may prepay the indebtedness under this Contract in full at any time without penalty.

**Security Interest.** To secure the payment of the indebtedness evidenced above, and Buyer's performance of the agreements provided herein, Buyer grants Seller a purchase money security interest under the provisions of the Uniform Commercial Code and the Mississippi Motor Vehicle Title Law, in and to the described Vehicle, together with all accessories now or within 20 days hereafter installed in or affixed to the Vehicle, and all accessories at any time installed in or affixed thereto, and the proceeds of the foregoing, including the proceeds of insurance on the foregoing and all rights which Buyer under any vehicle service contract covering any portion of the Vehicle, accessories, accessions, proceeds and rights described above are sometimes referred to in this Contract as the "Collateral").

**Additional Security.** As additional security, Buyer hereby assigns to Seller all rebates of unearned premiums and charges on any property insurance which Buyer may have on the Collateral, on any credit life and credit disability insurance, and any vehicle service contracts financed under this Contract. Property and any other indebtedness owed by Buyer to Seller or its assigns may also secure the indebtedness evidenced by this Contract. The preceding sentence does not apply, however, if the property is Buyer's principal dwelling or to the extent that the property consists of "household goods", as that term is used in the F.T.C. Credit Practices Rule, 16 CFR, Part 444 for 12 CFR, 227, Subpart B if assigned to a bank).

**Set-Off.** Buyer hereby agrees that if Buyer is in default under this Contract, the Seller may set-off Buyer's indebtedness under this Contract against any which Buyer owes Seller (or any assignee) provided, however, that such right is limited as to any Individual Retirement Account Buyer may have with this

**Waiver of Notice.** Buyer hereby waives presentment for payment and acceptation of maturity, notice of nonpayment, protest and notice of protest, dishonor, dishonor, and diligence in collection and the filing of suit and agreement of maturity.

**Party Designations.** The term "Buyer", "you", or "your" shall mean each and every person, past and present, who signs this Contract as Buyer or Co-Buyer. "Seller" as used herein shall refer to the parties signing this Contract as Seller and any assignee, except where the context specifically differentiates between Seller and any assignee.

This Contract, including provisions on the reverse side hereof, constitutes the entire agreement between the parties regarding the matters addressed waivers or modifications shall be valid unless written upon or attached to this Contract.

**Notice to Buyer: 1. Do not sign this contract before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the contract you sign.**

Buyer acknowledges receipt of a copy of this Contract, and that before he or she signed it, it was complete and all were completely filled in.

SKINNERS DASH-N-PONT-INC TREN., IN

_____ (Seller)

BY _____
         (Name)                                    (Title)

_____ Signature

Mississippi • Simple Interest

4/395   11/98   Trustmark National Bank          Notice: See Other Side For Important Information

period of 10 days or to remove or permit the removal of said Collateral outside the State of Mississippi, except for temporary periods in the normal and customary use thereof, without Seller's prior written consent or Buyer further agrees not to give, sell, exchange, lease, loan, or otherwise dispose of said Collateral without prior written consent from the Seller.

**Good Repair and Liens.** Buyer agrees to keep the Collateral in good order and repair, and not to abuse, waste or destroy the Collateral, and to pay when due all taxes, assessments, charges, liens, and encumbrances at any time levied or placed on the Collateral and/or for its use and operation. If Buyer fails to pay such sums, Seller may do so but it will not be obligated to do so), on its behalf and add such amounts to the other amounts owed hereunder by Buyer. Buyer further agrees not to use said Collateral illegally or permit the illegal use of the same or permit the Collateral to be levied upon under any legal process or to permit anything to be done that may impair the security interest afforded by this Contract, or that may unreasonably or unnecessarily subject the Collateral to damage, wear or depreciation.

**Risk of Loss and Property Insurance.** Buyer agrees that Buyer will bear at all times the risk of loss or damage to the Collateral, including theft, collision or destruction, and that Buyer's obligation under this Contract will not be affected in any way by any such loss or damage. In the event any part of the Collateral is lost or damaged, Buyer agrees to notify Seller of such loss or damage, in writing, not later than 10 days after it occurs.

Buyer agrees to keep the Collateral insured at all times against loss or damage in an amount not less than the unpaid balance owed under this Contract, or the fair market value of the Collateral (whichever is less) under a policy naming Seller as loss payee and providing for payment directly to Seller in the event of loss or damage to the Collateral. BUYER MAY CHOOSE THE PERSON OR ENTITY THROUGH WHICH PROPERTY DAMAGE INSURANCE IS OBTAINED. BUYER HAS THE OPTION OF PROVIDING SUCH INSURANCE THROUGH AN EXISTING POLICY OR A POLICY INDEPENDENTLY OBTAINED AND PAID FOR BY BUYER. Seller may, for reasonable cause, decline the insurance coverage Buyer offers to provide. Buyer agrees to pay all premiums for the insurance when the premiums are due.

Buyer agrees to, and does hereby, direct the insurer to pay all proceeds directly to the Seller. Seller, at its discretion, may apply such proceeds to the indebtedness secured hereby, or use them to repair or replace the Collateral. Buyer hereby appoints Seller as his attorney-in-fact to file claims under any policy of insurance covering the Collateral (but Seller will not be obligated to file any such claim) and to endorse in Buyer's name any check or draft representing proceeds of any insurance on the Collateral.

**Credit Insurance.** If Buyer elects credit life or disability insurance coverage and is accepted by the insurance company, the terms and coverages will be described in the policies or certificates issued to Buyer by the insurance company. Buyer recognizes and agrees that the agent which purchases the insurance may be an employee or agent of the Seller, that Seller and any such employee may receive a portion of the premium paid for such insurance, a commission, and/or reimbursement of expenses relating to such insurance, and that the insurance may be purchased from a company or though an insurance agency affiliated with Seller through common ownership or otherwise.

**Default.** Buyer shall be in default under this Contract: (a) if Buyer has made any misstatement in connection with or has failed to pay or perform any of his obligations, agreements or affirmations hereunder including the failure to maintain the required insurance on the Collateral; (b) if any event occurs which results in acceleration of the maturity of the indebtedness of Buyer; (c) upon the death, dissolution, termination of existence or business failure of Buyer, or the appointment of a receiver for any part of the property of, assignment for the benefit of creditors by, or the commencement of any proceeding in bankruptcy or insolvency by or against Buyer or any surety for Buyer; (d) upon the loss of possession by Buyer of the Collateral; (e) if Seller in good faith deems itself insecure and its prospect of payment impaired; or (f) any federal, state or local government or any agency or instrumentality thereof seizes or takes possession of the Collateral in connection with any alleged illegal activity and refuses to return the Collateral to the Buyer.

Upon default, Seller may, at its option, declare the entire unpaid balance of the indebtedness evidenced hereby due and payable, without demand or notice, and proceed to enforce payment of same and to exercise any or all rights and remedies afforded it herein or under the Uniform Commercial Code of Mississippi, or other applicable law, all of which shall be cumulative. Seller's failure to elect to declare the entire unpaid balance herein due and payable on the occurrence of a default shall in no manner impair or affect such right to do so for any subsequent or other default. To the extent that Seller is required to give Buyer notice of any sale or other disposition of the Collateral after default, Buyer agrees that the requirement of reasonable notice will be met if it delivers the notice to Buyer or mails the notice by first class United States mail or registered or certified mail at Buyer's address shown on this Contract, or such other address as Buyer may have furnished Seller in writing for that purpose, not later than 10 days before the time of such sale or other disposition of the Collateral. Upon demand by Seller, Buyer shall assemble the Collateral and make it available to Seller at a place reasonably convenient to Seller and Buyer. Buyer agrees to pay all costs and expenses incurred by Seller as a result of any default by Borrower, including but not limited to collection costs and costs related to locating, transporting, storing, preparing, selling or otherwise handling or disposing of the Collateral, including costs of Seller's own employees and its contractors. Buyer agrees to pay all such costs incurred by Seller even if Buyer's default is cured and repossession of the collateral does not occur, or Buyer voluntarily delivers the Collateral to Seller after Seller has incurred said costs.

**Entry of Premises Where Collateral is Located.** Buyer hereby grants to Seller, and its agents and contractors an irrevocable license, coupled with their interest in the Collateral, to come upon any premises where the Collateral is located from time to time, whether during daylight or at night and whether the premises are fenced or posted, to inspect the Collateral and, if Buyer is in default under this Contract, to repossess the Collateral. Buyer agrees that the entry upon such premises for these purposes will not be a trespass on the premises and that its repossession of the Collateral after default will not be a trespass to, or a conversion of, the Collateral.

**Removal of Non-collateral Personal Property.** If Buyer is in default under this Contract, Buyer agrees immediately to remove from the Collateral all of Buyer's property which is not part of the Collateral. If Buyer fails to remove Buyer's personal property from the Collateral and the Seller or its contractor repossesses the Collateral, Buyer will not hold Seller responsible in any way for taking Buyer's personal property, and Seller may hold Buyer's personal property until Buyer comes to claim it or Seller may return it to Buyer by whatever means it deems appropriate or dispose of it as provided below. Seller will not be obligated to hold such property for Buyer or to return it to Buyer or to compensate Buyer for it in any way unless Buyer notifies Seller in writing, that Seller has taken personal property which is not a part of the Collateral within 60 business days after it takes possession of the property. Buyer agrees to pay any reasonable cost Seller or its contractor incurs in storing Buyer's personal property after Seller takes possession of it. If the personal property is not claimed within such 60 day period, Buyer agrees that Seller may assume that Buyer has abandoned it, and that Seller may dispose of it.

**Cancellation of Insurance and Other Contracts After Default.** Buyer agrees that if Buyer is in default under this Contract, or if Buyer does not qualify for insurance coverage, or if the Collateral is repossessed, Seller is authorized, but not obligated, to cancel any insurance or service contract, extended warranty, credit life insurance, credit disability insurance, vehicle service contracts purchased through Seller or financed under this Contract, and to notify the issuers of such contracts of such events, to request, receive and give receipt for any rebates of unearned premiums on such insurance, or vehicle service contracts, to endorse in Buyer's name any check or draft for those premium rebates, and to apply those premium rebates as a credit against Buyer's obligations under this Contract. If for any other reason such insurance or vehicle service contracts are terminated prior to maturity of Buyer's obligations under this Contract, Seller may request, receive and give receipt for any rebates of such unearned premiums and to endorse checks and drafts and apply such rebates to Buyer's obligations under this Contract.

**Collection Costs and Attorney's Fees.** If Seller refers this Contract to an attorney who is not its salaried employee for collection and/or repossession of the Collateral, Buyer agrees to pay court costs and an attorney's fee in an amount equal to 15% of the amount actually due and unpaid at the time the balance of the Contract is accelerated and the entire amount thereof is declared to be due.

**Rights Cumulative; Waivers; Extensions.** Buyer agrees that Seller's rights under this Contract, under any other agreements Buyer may have with Seller under this Contract or under any other agreement or under applicable law are cumulative, and that Seller will not by any act, delay, omission, or otherwise be deemed to have waived any of its rights or remedies and no waiver by Seller of any one or more of its rights or remedies shall be operative as a waiver of any other rights or remedies. Any delay in enforcing its right without losing any of its rights or being required to thereafter notify Buyer that Buyer must strictly comply with the terms of this Contract before it may exercise its right to accelerate the indebtedness and/or repossess the Collateral. Seller may take any partial payments and may delay in enforcing its right without releasing any collateral, or may take any action to perfect its security interest in any collateral, or release any collateral, or fail to perfect its security interest in any collateral, from this Contract, and it may grant extensions, renewals or indulgences to Buyer or to any other party obligated to pay this Contract, all without releasing or in any way affecting Buyer's obligation on this Contract.

**Assignment of Contract.** Buyer acknowledges that Seller may assign this Contract to Trustmark National Bank or to another financial institution ("Bank"). BUYER ACKNOWLEDGES AND UNDERSTANDS FURTHER THAT SELLER AND BANK ARE SEPARATE AND WHOLLY-INDEPENDENT ENTITIES; THAT SELLER AND ITS EMPLOYEES ARE NOT AGENTS OR REPRESENTATIVES OF BANK FOR ANY PURPOSES; THAT BANK HAS NO RIGHT OF CONTROL OVER SELLER OR ITS EMPLOYEES; AND THAT SELLER AND ITS EMPLOYEES HAVE NO RIGHT OR AUTHORITY TO REPRESENT, WARRANT, SPEAK FOR OR BIND BANK IN ANY WAY. Buyer further acknowledges that neither the Bank nor its employees had any role in the sale or issuance of any certificate or policy of credit life or disability or property insurance or the sale of any vehicle service contract and that the Bank has no obligation to Buyer with respect to such insurance or contracts, except to apply any proceeds or rebated premiums and charges of such insurance and contracts against Buyer's obligations under this Contract and related premiums and charges. Buyer acknowledges that Bank has no obligation to request or collect such proceeds this Contract. Buyer further acknowledges and agrees that Seller may receive a portion of the finance charge or other compensation from the Bank in consideration for the assignment. Buyer agrees that if this Contract is assigned to Bank, Buyer will make payments under this Contract directly to Bank, at its offices, after Buyer receives notice of the assignment. Consistent with the notice below, Buyer further agrees, that any claim, defense, set-off, recoupment or other action which may be asserted against the Bank or other assignee, shall be limited to an amount which shall not exceed the amount paid by Buyer under the provisions of this Contract.

**Miscellaneous.** This Contract shall be governed, construed, and enforced in accordance with the laws of the State of Mississippi and the United States. If any provision of this Contract is unlawful or unenforceable, each such provision shall be without force and effect and shall not affect the validity of any other provision hereof. No provision of this Contract is intended to require the payment of interest or finance charges in excess of the maximum permitted by law. If any court determines that interest or any finance charge in excess of the maximum permitted by law is provided for in this Contract, the provisions of this paragraph will govern, and Buyer will not be obligated to pay the amount of such interest or finance charge to the extent that it is in excess of the maximum interest or finance charge permitted by law, and any excess interest or finance charge collected will be applied in reduction of the principal sum. Buyer understands and agrees that some payments made to third parties, including affiliates of the Seller through common ownership, or otherwise, may include money retained by

## NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

### Notice to Purchaser of Used Vehicle

If you are buying a used vehicle with this contract, information on the window form overrides any contrary provisions in the contract of sale. NOTICE: SEE OTHER SIDE FOR IMPORTANT INFORMATION.

### ASSIGNMENT
### ENDORSEMENT AND TRANSFER

FOR VALUE RECEIVED, and subject to the terms of any agreement with assignee (anything herein to the contrary notwithstanding, the provisions of such agreement shall govern), the undersigned Seller of the Contract hereby sells and assigns said Contract, together with all of its right, title and interest in and to the Collateral identified therein, to _____ Bank ("Bank"), its successors and assigns...

☐ If checked, the following is substituted for the preceding sentence: The Contract is transferred to Bank without recourse upon the undersigned except as stated above or as may be provided in other agreements between the undersigned and the Bank.

_____ (SELLER)        BY _____
                                           (AUTHORIZED SIGNATURE AND TITLE)

IN THE CIRCUIT COURT OF COPIAH COUNTY, MISSISSIPPI

LEONORA MURRAY, STEPHEN                                    PLAINTIFFS
MURRAY, SR., and M. B., a minor, by and through
her maternal grandmother, LEONORA MURRAY

VS.                                              CIVIL ACTION NO.  2010-0086

MOTORS LIQUIDATION COMPANY f/k/a
GENERAL MOTORS CORPORATION;
GENERAL MOTORS LLC;  and SKINNER
CHEVROLET BUICK PONTIAC GMC                                DEFENDANTS


ORDER DISMISSING MOTORS LIQUIDATION
COMPANY f/k/a GENERAL MOTORS CORPORATION
AS PARTIES AND AMENDING THE STYLE OF THE
CASE TO "LEONORA MURRAY, STEPHEN MURRAY,
SR. and M. B., a minor, by and through her maternal
grandmother, LEONORA MURRAY VS. GENERAL MOTORS
LLC and SKINNER CHEVROLET BUICK PONTIAC GMC"


THIS CAUSE having come on to be heard upon the motion, *ore tenus*, of the plaintiffs,

Leonora Murray, Stephen Murray, Sr., and M. B., a minor, by and through her maternal grandmother,

Leonora Murray, requesting that the Court enter an order dismissing Motors Liquidation Company

f/k/a General Motors Corporation ("GM") as a defendant in this action and to amend the style of the

case to "Leonora Murray, Stephen Murray, Sr., and M. B., a minor, by and through her maternal

grandmother, Leonora Murray vs. General Motors LLC and Skinner Chevrolet Buick Pontiac GMC,"

and the Court now being fully advised in the premises is of the opinion and finds that the motion,

*ore tenus*, is well taken and the relief sought therein shall be and hereby is granted.


EXHIBIT
2

1

FILED

MAR 3 0 2010

EDNA E. STEVENS
CIRCUIT CLERK
BY

IT IS, THEREFORE, ORDERED AND ADJUDGED that Motors Liquidation Company f/k/a General Motors Corporation ("GM") is hereby dismissed as a defendant in this action.

IT IS, FURTHER, ORDERED AND ADJUDGED that the style of the case is hereby amended to "Leonora Murray, Stephen Murray, Sr., and M. B., a minor, by and through her maternal grandmother, Leonora Murray vs. General Motors LLC and Skinner Chevrolet Buick Pontiac GMC."

SO ORDERED AND ADJUDGED, this the 26th day of March, 2010.

_____
CIRCUIT COURT JUDGE

PREPARED AND SUBMITTED BY:
CARROLL RHODES, ESQ., MSB # 5314
LAW OFFICES OF CARROLL RHODES
POST OFFICE BOX 588
HAZLEHURST, MS 39083
TELEPHONE: (601) 894-4323
FACSIMILE: (601) 894-1464
E-Mail:crhode@bellsouth.net

2

Law Offices of

# Carroll Rhodes

**Attorney and Counselor at law**
**119 Downing Street**
**Hazlehurst, Mississippi 39083**

Carroll Rhodes
crhode@bellsouth.net

Mailing Address:
Post Office Box 588
Hazlehurst, MS 39083
(601) 894-4323
FAX #
(601) 894-1464

October 9, 2009

**RECEIVED**

OCT 1 3 2009

ESIS-GM CLAIMS UNIT

Mr. Sean Kelly
ESIS/General Motors Company
Post Office Box 300
Mail Code 482 C19 B61
Detroit, MI 48265-3000

| Re: | Claimants: | Leonora Murray and Mariyah Brown |
|---|---|---|
| | Your File No.: | 677983 |
| | Your Client: | General Motors Corporation |
| | Date/Event: | 8-25-2009 |
| | Subject Vehicle: | 2006 Chevrolet HHR - Corrected Letter |

Dear Mr. Kelly:

Enclosed are copies of the following documents: (1) the Mississippi Title for the 2006 Chevrolet HHR owned by Mr. Murray; (2) the accident report; and (3) and the insurance adjuster's evaluation and estimate of damage to the car involved in the accident. As you can see, the left front suspension steering knuckle and the left front suspension stabilizing bar bracket, and the left front suspension stabilizing bar link had to be replaced. They were broken prior to the accident causing the accident. The frame was bent as well.

Please call me to discuss the case after you have reviewed these documents.

Thank you for your cooperation in this matter.

Sincerely,

Carroll Rhodes

CR:ssa
cc:   Mr. and Mrs. Murray
      Ms. Rochita (Brown) Reid

**EXHIBIT**

tabbies

3

## IN THE CIRCUIT COURT OF COPIAH COUNTY, MISSISSIPPI

**LEONORA MURRAY, STEPHEN**
**MURRAY, SR., and M. B., a minor, by and through**
**her maternal grandmother, LEONORA MURRAY**                    **PLAINTIFFS**

**vs.**                                        **CIVIL ACTION NO.: 2010-0086**

**MOTORS LIQUIDATION COMPANY f/k/a**
**GENERAL MOTORS CORPORATION;**
**GENERAL MOTORS LLC; and SKINNER**
**CHEVROLET BUICK PONTIAC GMC**

        **DEFENDANTS**

State of Michigan

County of Wayne

### AFFIDAVIT

BEFORE ME the undersigned authority, came and appeared

CHERLYN STAGNER

who stated under oath that:

1. She is the Manager of the Business Resource Center of the CARS (Customer and Relationship Services) Group, Consumer Support for Customer Care & Aftersales for General Motors LLC (GM).

2. She has reviewed GM's Product Allegation Resolution (PAR) service request #71-753291416 (the PAR service request) about the August 25, 2009 motor vehicle accident involving Stephen Murray's 2006 Chevrolet HHR. The PAR service request includes a record of statements made by Stephen Murray of Hazlehurst, Mississippi about a motor vehicle accident that occurred on August 25, 2009 involving a 2006 Chevrolet HHR, VIN 3GNDA13D96S509564.

3. The PAR service request includes a record of statements made by Stephen Murray. The PAR service request was made at the time Mr. Murray made those statements, from information transmitted by Mr. Murray to General Motors. The PAR service request is kept in the course of a regularly conducted business activity by General Motors. It was the regular practice of that business activity of General Motors to make that PAR service request record on behalf of the customer, Mr. Murray.

1

**EXHIBIT**

**4**

tabbies®

4.  On August 26, 2009, Stephen Murray called General Motors and stated that Leonora Murray was involved in a motor vehicle accident on August 25, 2009 while driving a 2006 Chevrolet HHR.  Mr. Murray stated that the left body side of the vehicle fell and his wife lost control of the vehicle.

CHERYLN STAGNER

Sworn to and subscribed before me this 25th day of March _____, 2010.

Notary Public

My Commission Expires: March 6, 2014

HEATHER L HAINES
Notary Public, State of Michigan
County of Macomb
My Commission Expires Mar. 06, 2014
Acting in the County of Wayne

**IN THE CIRCUIT COURT OF COPIAH COUNTY, MISSISSIPPI**

**LEONORA MURRAY, STEPHEN
MURRAY, SR., and M. B., a minor, by and through
her maternal grandmother, LEONORA MURRAY**                   **PLAINTIFFS**

**vs.**                                                    **CIVIL ACTION NO.: 2010-0086**

**MOTORS LIQUIDATION COMPANY f/k/a
GENERAL MOTORS CORPORATION;
GENERAL MOTORS LLC,; and SKINNER
CHEVROLET BUICK PONTIAC GMC**                              **DEFENDANTS**

State of Mississippi

County of _Harrison_

<u>**AFFIDAVIT**</u>

BEFORE ME the undersigned authority, came and appeared

WILLIAM O'KEEFE

who stated under oath that:

1.      He is an employee of ESIS.

2.      As part of his employment duties with ESIS, he photographed a 2006 Chevrolet HHR, VIN 3GNDA13D96S509564 (the 2006 Chevrolet HHR) on November 24, 2009.

3.      When he photographed the 2006 Chevrolet HHR, he was accompanied by Stephen Murray.

4.      Three of the photographs that he took of the 2006 Chevrolet HHR on November 24, 2009 are attached to this Affidavit.

5.      When he photographed the 2006 Chevrolet HHR, he saw that the top of the left (driver's side) front wheel was outward and down from its normal orientation and the bottom of the left front wheel was inward and upward from its orientation.

6.      When he photographed the 2006 Chevrolet HHR, on November 24, 2009, he saw that the steering knuckle on the left front wheel was broken.

7.      When he photographed the 2006 Chevrolet HHR, he saw that the top of the right (passenger's side) front wheel was in its normal orientation and the bottom of the right front wheel was in its normal orientation.



EXHIBIT
5

8.    When he photographed the 2006 Chevrolet HHR on November 24, 2009, he did not see any of the components that attach the right front wheel to the car that were broken.

_____
WILLIAM O'KEEFE

Sworn to and subscribed before me this 26th day of _____March_____, 2010.


_____
Notary Public


My Commission Expires: _____

My Commission Expires: May 7, 2011



2







## IN THE CIRCUIT COURT OF COPIAH COUNTY, MISSISSIPPI

LEONORA MURRAY, STEPHEN
MURRAY, SR., and M. B., a minor, by and through
her maternal grandmother, LEONORA MURRAY                    PLAINTIFFS

vs.                                          CIVIL ACTION NO.: 2010-0086

MOTORS LIQUIDATION COMPANY f/k/a
GENERAL MOTORS CORPORATION;
GENERAL MOTORS LLC,; and SKINNER
CHEVROLET BUICK PONTIAC GMC                                 DEFENDANTS

State of Mississippi

County of Hinds

### AFFIDAVIT

BEFORE ME the undersigned authority, came and appeared

VERA SKINNER

who stated under oath that:

### INTRODUCTION

1.  She is one of the owners of Skinner Chevrolet Buick Pontiac GMC (Skinner Chevrolet).

2.  She has reviewed the business records of Skinner Chevrolet concerning the 2006 Chevrolet HHR automobile, VIN 3GNDA13D96S509564 (the subject car).

### SKINNER CHEVROLET SOLD THE CAR

3.  Skinner Chevrolet sold the subject car to Stephen Murray on August 12, 2005.

### SKINNER CHEVROLET DID NOT DESIGN OR MANUFACTURE THE CAR

4.  Skinner Chevrolet did not design or manufacture the subject car.

5.  Skinner Chevrolet did not represent itself to be the designer of manufacturer of the subject car.

EXHIBIT
6

## SKINNER CHEVROLET DID NOT EXERCISE SUBSTANTIAL CONTROL OVER THE AIR BAGS OR STEERING

6.     Skinner Chevrolet did not exercise substantial control over any aspect of the design, testing, manufacture, packaging or labeling of the air bag system of the subject car, the steering system of the subject car, or the driver's front wheel assembly and any other component of the subject car that could cause the driver's side of the front end of the car to suddenly drop to the ground as plaintiff alleged the front of the car did in ¶38 of the *Complaint* in this lawsuit.

## SKINNER CHEVROLET DID NOT ALTER OR MODIFY THE AIR BAGS OR STEERING

7.     Skinner Chevrolet did not alter or modify the air bag system of the subject car, the steering system of the subject car, or the driver's front wheel assembly and any other component of the subject car that could cause the driver's side of the front end of the car to suddenly drop to the ground as plaintiff alleged the front of the car did in ¶38 of the *Complaint* in this lawsuit.

## SKINNER CHEVROLET HAD NO KNOWLEDGE OF A DEFECT IN THE CAR WHEN IT SOLD THAT CAR

8.     Skinner Chevrolet did not have actual or constructive knowledge of any defective condition in the subject car at the time it sold that car to Stephen Murray.

9.     Skinner Chevrolet did not receive any technical data or information before it sold the subject car to Stephen Murray that indicated there was a defective condition in the air bag system of the subject car, the steering system of the subject car, or the driver's front wheel assembly and any other component of the subject car that could cause the driver's side of the front end of the car to suddenly drop to the ground as plaintiff alleged the front of the car did in ¶38 of the *Complaint* in this lawsuit.

## SKINNER CHEVROLET HAD NO KNOWLEDGE OF A DEFECT IN THE CAR WHEN IT PERFORMED WORK ON THAT CAR

10.    Skinner Chevrolet did not have actual or constructive knowledge of any defective condition in the subject car at the time it released the car to the customer after it performed maintenance, service or repair work on that car after it sold that car to Stephen Murray.

11.    Skinner Chevrolet did not receive any technical data or information after it sold the subject car to Stephen Murray and before it released the car to the customer after it performed maintenance, service or repair work on that car that indicated there was a defective condition in the air bag system of the subject car, the steering system of the subject car, or the driver's front wheel assembly and any other component of the subject car that could cause the

2

driver's side of the front end of the car to suddenly drop to the ground as plaintiff alleged the front of the car did in ¶38 of the *Complaint* in this lawsuit.

## SKINNER CHEVROLET DID NOT INSTALL THE AIR BAGS AND STEERING

12.   Skinner Chevrolet did not install the air bag system on the subject car, the steering system on the subject car, or the driver's front wheel assembly and any other components on the subject car that could cause the driver's side of the front end of the car to suddenly drop to the ground as plaintiff alleged the front of the car did in ¶38 of the *Complaint* in this lawsuit.

## SKINNER CHEVROLET DID NOT CALIBRATE THE AIR BAGS OR STEERING

13.   Skinner Chevrolet did not calibrate the air bag system on the subject car, the steering system components on the subject car, or the driver's front wheel assembly and any other components on the subject car that could cause the driver's side of the front end of the car to suddenly drop to the ground as plaintiff alleged the front of the car did in ¶38 of the *Complaint* in this lawsuit.

## SKINNER CHEVROLET DID NOT TEST THE AIR BAGS OR STEERING

14.   Skinner Chevrolet did not test the air bag system on the subject car, the steering system components on the subject car, or the driver's front wheel assembly and any other components on the subject car that could cause the driver's side of the front end of the car to suddenly drop to the ground as plaintiff alleged the front of the car did in ¶38 of the *Complaint* in this lawsuit.

## SKINNER CHEVROLET DID NOT PERFORM WORK ON THE AIR BAGS AND STEERING

15.   Skinner Chevrolet performed no maintenance, repair or service work on either the air bag system of the subject car, the steering system of the subject car, or the driver's front wheel assembly and any other components on the subject car that could cause the front end to suddenly drop to the ground as plaintiff alleged the front of the car did in ¶38 of the *Complaint* in this lawsuit.

## SKINNER CHEVROLET MADE NO EXPRESS WARRANTIES ABOUT THE AIR BAGS OR STEERING

16.   Skinner Chevrolet made no express warranties or other express factual representations about the subject car, other than as a mere conduit of information from the manufacturer of the car (General Motors Corporation).

17.   Skinner Chevrolet did not advertise or market the subject car, other than as a mere conduit of information from the manufacturer of the car (General Motors Corporation).

3

_Vera Skinner_
VERA SKINNER

Sworn to and subscribed before me this ___1___ day of ___April_____, 2010.

_____
Notary Public

My Commission Expires:

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 88421
ANGELA PEVEY
Commission Expires
Feb. 3, 2012
SIMPSON COUNTY

4